NATHAN F. HENRY vs. JOHN BELL 2d.   (In Chancery.)   WINDHAM, *February,* 1833.

That a common quit-claim deed, with a consideration in money named, and a condition to redeem, & paying back such consideration with interest, is not evidence of a debt, like the common case of a note and mortgage, but is more in the nature of a right to repurchase.

That a man, who gives such a quit-claim deed of land, to which he professes to have no title except a mere parol right to redeem, may acquire right by descent, and hold possession adverse to his grantee.

It appears by the orator's bill of complaint, that, in August, 1820, the defendant gave to one Benjamin Henry a quit-claim deed of a piece of land, acknowledging therein, that he had received, as a consideration therefor, the sum of eighty-two dollars and forty-seven cents. To which deed was added a condition, that the defendant might redeem said premises, by giving good security in ninety days, that the same sum and interest should be paid in two years; and the complaint alleges, that the same had never been paid. It also appears, that, on the 27th day of May, A. D. 1827, said Benjamin, by his deed duly executed, assigned said premises to the said Nathan F. Henry.

The orator, in his bill of complaint, treats this quit-claim deed as a mortgage, given to secure to the said Benjamin Henry the sum of $82,47, money lent and being the consideration of said quit-claim deed. That he concludes, by praying for a decree of foreclosure of said mortgaged premises.

The substance of the answer of the defendant, John Bell 2d, was, that, at the date of said quit-claim mortgage deed, he was imprisoned in the common jail in said County, on an execution in favor of said Benjamin Henry; and had cited him to show cause why he, the said Bell, should not be liberated from his said imprisonment, on taking the poor debtors' oath. And the said Benjamin appeared to show cause as aforesaid, by showing, that the defendant had a verbal equity of redemption in the lands, described in the orator's bill of complaint;—he, the defendant, having, before that time, conveyed said land to one Samuel Fish, Jr., to wit, in May, 1817, for a debt of $300, which he then owed said Fish, who at the same time verbally promised said Bell, that he might redeem said premises by paying said sum of $300 and interest. He

WINDHAM,
February,
1833.

Henry
vs.
Bell.

also answers, that said $300 was then about the true value of said premises. He further answers, that said Benjamin Henry, on receiving said quit-claim deed, discharged said Bell from his said imprisonment.—That he, the said Bell, considering his interest in said premises of no value, did not wish for the said condition in said deed; but the same was inserted at the request of said B. Henry.—That said Fish was present, and expressed a willingness still to convey said premises, on receiving said $300 and interest; and then promised said B. Henry, that he would so convey to him on receiving such payment. Said Bell further answers, that, on the 1st day of May, A. D. 1821, the said Fish, for the consideration of $80'75, conveyed by deed to Jennet Bell, the mother of said defendant, the eleven acres of said land, which lies north of the road, as appears by deed, &c.; and, from said last date, said Jennet occupied the said eleven acres till her decease, which was on the 5th day of August, A. D. 1825; since which time the said defendant, for himself as heir to his said mother, and for the other heirs, has occupied the said eleven acres, and still occupies the same. All which premises were well known to the said Benjamin Henry when he took said quit-claim deed, and from time to time since, as they occurred, as said defendant fully believes.

The defendant further answers, that he was in possession of said eleven acres adversely to the said Benjamin Henry at the said time, when he conveyed said premises to the orator; and, therefore, he insists, that the said last mentioned deed is void. He further answers, that he had no title whatever to any of said premises, when he gave said deed to said Benjamin Henry, except said verbal promise from said Fish, which promise the said defendant then relinquished to said Benjamin Henry; and said Fish then made a new promise to said Benjamin Henry as before mentioned.

This answer was traversed, and testimony taken by each party.

It appears by the testimony, that there was a prior mortgage deed from said John Bell, of this whole tract, which is called seventy acres in the deed to Benjamin Henry—securing to said Jennet Bell her maintenance.—And that

WINDHAM,
February,
1833.

Henry
vs.
Bell.

said Fish conveyed to her said eleven acres north of the road, upon her quitting to him the remainder of the tract, which, it seems, was upon the south side of the road ; Fish receiving about eighty dollars besides.

*The counsel for the orator* contended, that the defendant's deed to Benjamin Henry conveyed all his right in this land.

2d, That his right was the whole land, excepting the two incumbrances—one to his mother, and the $300 due to Fish—That the defendant's right to redeem by paying the debt due to Fish, may be established by parol, notwithstanding the deed to Fish was absolute ; and cited 2 Fonblanque, 263, *Walker* vs. *Walker.*—2 Atk. 388.—5 Bin. 499.—1 J. Ch. Rep. 594.

3d, That these incumbrances were off, by the conveyances above mentioned, between Fish and Jennet Bell, and by Fish's conveying a part to the Wheelers, as mentioned in his (Fish's) deposition—and that the defendant, in becoming owner or proprietor of any part of this land, must be considered as agent for Benjamin Henry ; at least said Henry had a right to claim that he acted as his agent ; and all would inure to the benefit of said Benjamin Henry. And the assignment of said Benjamin Henry to the orator, vests in him all the title, except the defendant's right to redeem, the foreclosure of which is now sought.

To say, that John Bell had the estate, at the time of the execution of the assignment from Benjamin Henry to orator, by an adverse title, is begging the whole question.— All the title that Jennet Bell shows, she derived through John Bell and his mortgage. And we have shown, that Jennet Bell's title was in effect John Bell's title. It is nothing more than the mortgagor holding over against the mortgagee after condition broken ; and has nothing to do with the statute to prevent fraudulent speculations and sales of choses in action.

*The counsel for the defendant* alluded to the charges in the bill, the substance of the answer, and then concisely argued the points in issue, in reference to the testimony in the case, as follows :

The testimony of S. Fish shows the deeds to have been

WINDHAM,
February,
1833.

Henry
vs.
Bell.

executed, as set forth in the answer; and that he understood the deed to Henry to be of the equity of redemption; and confirms the answer as to the possession of Jennet and John Bell; and as to the claim of John Bell as heir of Jennet [Bell, which is also confirmed by Solyman Bell, the other witness. Samuel Fish also states his own views of the title he (Fish) held, and of the title of Jennet Bell; but this, it is presumed, cannot be considered as testimony.

If the Court shall be of opinion, that, after the discharge of Benjamin Henry's debt, there was any interest to which a release could attach, and that it was, as stated, a loan and valid mortgage, and that a decree can be made without bringing forward Samuel Fish as a party,—to all which questions the attention of the Court is called,—the defendant then contends, that the operation of the release cannot be carried beyond the time when it was given; and that no decree ought to be made affecting the title *to the eleven acres*, which has been cast on John Bell since the execution of the release; for,

1st, No right passes by a release, but the right which the releasor hath at the time of the release made—as in case of the release of the son of a disseizee in the life time of his father.—Co. Lit. 265 (Day's Ed.)

2d, An expectancy as heir is a naked possibility, and not an interest capable of being made the subject of a mortgage or contract.— *Carleton* vs. *Leighton*, 3 Merivale 667.—Cited 4 Kent's Com. 138.

We also insist, that defendant's possession of the eleven acres was adverse to Benjamin Henry, and his assignment to the orator void.—Comp. Laws, p. 171.

The opinion of the Court was pronounced by

HUTCHINSON, Chancellor.—The defendant has endeavored to place the eleven acres north of the road on a different footing from the rest of the land; and to this he sets up a title, acquired after his deed to Henry. The orator urges, that the defendant's deed to Henry estops him from treating this as adverse to Henry : That, in fact, it inures to the benefit of Henry. This depends upon the character of the deed itself. If this deed to Henry contained the usual covenants of warranty, it would clearly operate as con-

WINDHAM,
February,
1833.

Henry
vs.
Bell.

tended by the orator. It would be worse than useless to permit the defendant to take this land by purchase or descent, after his deed to Henry, and hold it against that deed, and still let Henry recover its value, and perhaps other damages, on the covenant in his deed from the defendant. This circuity of action, and the costs attending such unnecessary suits, is saved to all the parties, by the doctrine of estoppels. Indeed, this is the true foundation of that doctrine. Without it there would either be a circuity of actions, each seeking his separate remedy, or there would be an equity which ought to be enforced in some way ; for no man ought to be permitted to sell his property, and receive his pay for it, and yet keep and enjoy it.—And, if one sells property by warranty, to which he has no title, and he afterwards purchases the same property, the law, transferring this newly acquired title to the grantee, in satisfaction of the covenants, does the most perfect justice, beside saving cost.

But this doctrine does not apply when a sale is made by quit-claim deed, and the grantee is made acquainted with the true nature of his grantor's title. In such case, if the title fails, the grantee has no remedy of any sort; and he *should* have none : for he knew what title he purchased ; and, if he had not intended to risk the title, and give a price accordingly, he would have required security by inserting covenants in his deed.

In the case before us, there are no covenants in the deed, and there is no complaint of defendant's secreting any want of title in himself when he gave the deed to Henry. There being no claim in favor of Henry for any thing except what title the defendant then had, the defendant had a right to take an outstanding title to this, as much as any other land, either by purchase or descent, and hold the same against Henry. The eleven acres north of the road having passed to Jennet Bell in a way that Henry could enforce no claim against her, she held adverse to Henry, and to every one else. She held in her own right, and her possession was adverse to Henry. This continued from 1821 to 1825, when she died, and the title and possession passed to her heirs; of whom the defendant was one. His answer upon this part of the case is fully supported by the testimony of

WINDHAM,
February,
1833.

Henry
vs.
Bell.

Solyman Bell and Samuel Fish. The defendant, at the time when Benjamin Henry conveyed to the orator, being in possession for himself and the other heirs of his mother, Jennet Bell, claiming title by descent, his possession was adverse to Henry, and the deed of assignment to the orator was, therefore, void by the statute of 1807, so far as relates to the eleven acres. The assignment would operate to convey to the orator what interest Benjamin Henry had in the 20 or 30 acres south of the road.

Had there been, strictly speaking, a debt secured by this deed from the defendant to Henry, that might have passed by the deed, if that appeared by the deed to be the intention of the parties. But here was no debt. The debt due to Henry was paid by the defendant's giving him the quit-claim deed. The condition of the deed secures to defendant the right of purchasing back of Henry the title his deed conveyed. But, according to the answer of the defendant, supported by the testimony, this title was nothing more than was created by the parol contract of Fish to re-convey, upon receiving his three hundred dollars with interest. And this promise was transferred with the deed, by Fish's making a new promise direct to Henry.— We discover no decree that we can make, upon the facts before us, that can be of any beneficial effect, and we are are inclined to dismiss the bill., unless the orator wishes to retain it, and amend by making Benj. Henry, and perhaps Fish a party ; and effect that redemption as against Fish, without which, all his other title can avail him nothing. The defendant, in his answer, says, the condition was annexed to the deed— not by his request, but by that of Henry. It is not easy to conceive what motive either could have for requesting such a condition in the deed, when Fish was present, and virtually discharged his old promise to Bell, by making a new one, of the same tenure, to Henry.

Afterwards, the orator's counsel said, he had no wish to pursue the complaint further ; and the decree of dismissal was entered.

*John Phelps*, for the orator.
*Wm. C. Bradley*, for the defendant.